IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| In re: | ) | |
|---|---|---|
| | ) | |
| ParkNorth Group, LLC, | ) | Case No.: 05-00035-BGC-7 |
| | ) | |
| Debtor. | ) | |

| ParkNorth Group, LLC, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | A. P. No.: 05-00004 |
| | ) | |
| Nettles Hart Hess & Hughes, P.C., | ) | |
| | ) | |
| Defendant. | ) | |

# PARKNORTH 1

## ORDER DISMISSING COMPLAINT

### I. Background

There are two related adversary proceedings before the Court. The first is <u>ParkNorth Group, LLC v. Nettles, Hart, Hess & Hughes, P.C.</u>, AP No. 05-00004, which this Court will refer to as ParkNorth 1. ParkNorth 1 involves a complaint for sanctions filed directly in this Court. The second is <u>Nettles Hart Hess & Hughes, P.C. v. ParkNorth Group, LLC</u>, AP No. 05-00005, which this Court will refer to as ParkNorth 2. ParkNorth 2 involves a state court lawsuit removed by the debtor from the Circuit Court of Jefferson County, Alabama, to this Court.

The specific matters before the Court in the instant proceeding (ParkNorth 1) are the <u>Complaint</u> for sanctions filed on January 6, 2005, by the debtor and a <u>Motion to Dismiss Complaint for Sanctions</u> filed on January 20, 2005, by the defendant. After notice, a hearing was held on February 2, 2005. Appearing were Lee Benton for the Plaintiff-Debtor ParkNorth Group, LLC; Scott Williams for the defendant Nettles Hart Hess & Hughes, P.C. (Nettles Hart); and Dennis Schilling for the Trustee. The matters were continued to March 9, 2005.

The March 9, 2005, hearing was held. Appearing were Mr. Benton; Mr. Williams; James Henderson, the Trustee; Thomas Corbett and Jon Dudeck for the Bankruptcy

Administrator; and Robert Rubin and Derek Meek for Mark White (who represents Nettles Hart in the state court action). By consent of the parties, the matters were submitted on the pleadings.

In addition to the above, a Motion for Protective Order to Quash Subpoena of Mark White was filed on March 7, 2005; and a second Motion to Dismiss was filed on March 8, 2005, by Nettles Hart.

## II. Findings of Fact

### A. Background

The debtor filed the pending Chapter 7 case on January 3, 2005, and then filed the pending adversary proceeding on January 6, 2005. In its adversary proceeding, the debtor alleged that Nettles Hart violated the automatic stay when Nettles Hart filed a pleading entitled Motion for Order to Show Cause against "the debtor" in a pending state court action.

Nettles Hart had instituted that state court action to resolve a dispute between the parties over attorneys' fees. An arbitration award had been entered in the state court action against London & Yancey, LLC, the debtor's predecessor, before ParkNorth filed its bankruptcy. Nettles Hart's continuation of the state court action after the bankruptcy was filed was an attempt to collect that arbitration award.

At about the same time the debtor filed the instant adversary proceeding, it removed the state court litigation to this Court. That litigation is pending before this Court as ParkNorth 2 and is the subject of this Court's Order Remanding Case to State Court entered contemporaneously with this instant order.

At the time the state court action was removed to this Court, the record in that case became a part of this Court's record in ParkNorth 2. This Court has taken judicial notice of that record in deciding the issues in both ParkNorth 1 and ParkNorth 2.[1]

---

[1] Andrews v. Daw, 201 F.3d 521, 524 (4th Cir. 2000)(in deciding motion to dismiss, district court could, without converting motion into motion for summary judgment, take judicial notice of facts from a prior judicial proceeding); Henson v. CSC Credit Services, 29 F.3d 280, 284 (7th Cir. 1994)(district court properly took judicial notice of documents filed in prior state court case between the parties when dismissing plaintiff's complaint for failure to state a claim); Day v. Moscow, 955 F.2d 807, 811 (2nd Cir. 1992)(district court properly granted motion to dismiss for failure to state a claim where court's own records, which it could take judicial notice of, showed that claim was barred by res judicata), cert. denied, 506 U.S. 821 (1992); Scott v. Kuhlman, 746 F.2d 1377, 1378 (9th Cir. 1984)(court of appeals, in deciding that district court appropriately granted motion to dismiss, properly took judicial notice of pleadings on record from appeal in prior case involving same parties); Rhodes v. Meyer, 334 F.2d 709, 715 (8th Cir. 1964)(district court, in civil rights action arising out of contempt conviction in state court,

2

properly took judicial notice of affidavits filed by deputy sheriff in state court contempt proceedings), cert. denied, 379 U.S. 915 (1964); Total Control, Inc. v. Danaher Corp., 359 F. Supp. 2d 380, 383 (E.D. Pa. 2005)(when entertaining motion to dismiss, district court may, without converting motion to motion for summary judgment, take judicial notice of record in prior lawsuit in same court involving the same parties); Mangiafico v. Blumenthal, 358 F. Supp. 2d 6, 9-10 (D. Conn. 2005)(district court, in deciding motion to dismiss civil rights damages suit filed by correctional officer against state attorney general arising from attorney general's decision not to defend officer in prisoner's underlying civil action, could take judicial notice of docket and pleadings in underlying prisoner's civil rights litigation); Ashton v. City of Concord, 337 F. Supp. 2d 735,743 n.7 (M.D.N.C. 2004)(when considering motion to dismiss, district court may take judicial notice of facts from a prior state court lawsuit involving the same parties); Coyle v. Coyle, 334 F. Supp. 2d 284, 286 (E.D.N.Y. 2004)(when deciding a motion to dismiss, district court may take judicial notice of matters of public record, including pleadings and court orders from previous state court litigation between the parties), vacated in part on other grounds, Coyle v. Olsen, 2004 WL 2370685 (E.D.N.Y. 2004); Dolan v. Roth, 325 F. Supp. 2d 122, 129 (N.D.N.Y. 2004)(when deciding motion to dismiss, district court may, without converting motion to motion for summary judgment, take judicial notice of record in state court proceedings involving the same parties); Fadaie v. Alaska Airlines, Inc., 293 F. Supp. 2d 1210, 1214-1215 (W.D. Wash. 2003)(in whistle blower retaliation action brought by employees, district court, in deciding motion to dismiss, could take judicial notice of administrative complaint filed with OSHA and factual findings by Secretary of Department of Labor, which formed the basis of the employees' claims and were matters of public record); Harris v. New York State Dept. of Health, 202 F. Supp. 2d 143, 173 (S.D.N.Y. 2002)(in considering motion to dismiss for failure to state claim, district court may take judicial notice of pleadings and other documents filed in state court proceedings); Mitchell v. Henderson, 128 F. Supp. 2d 298, 301 (D. Md. 2001)(district court could, in deciding motion to dismiss, take judicial notice of record in prior lawsuit involving the same parties in the same court); Northgate Motors, Inc. v. General Motors Corp., 111 F. Supp. 2d 1071, 1077 (E.D. Wis. 2000)(when deciding motion to dismiss, district court may, without converting motion to motion for summary judgment, judicially notice facts from prior proceedings before administrative law judge involving the same parties, which were matter of public record); Nuno v. County of San Bernardino, 58 F. Supp. 2d 1127, 1129 n.1 (C.D. Cal. 1999)(district court could, when deciding motion to dismiss based on collateral estoppel in prisoner's action against peace officer for alleged use of excessive force, take judicial notice of court documents in plaintiff's criminal case, which culminated in plaintiff being convicted of obstructing a peace officer in performing an arrest); Crossroads Cogeneration Corp. v. Orange and Rockland Utilities, Inc., 969 F. Supp. 907, 915-916 (D.N.J. 1997), rev'd on other grounds, 159 F.3d 129 (3rd Cir. 1998)(when deciding motion to dismiss, district court could take judicial notice of prior decision of public service commission rendered in administrative proceeding involving the same parties); Steinmetz v. Toyota Motor Credit Corp., 963 F. Supp. 1294, 1298 (E.D.N.Y. 1997)(when entertaining motion to dismiss, district court may, without converting motion to motion for summary judgment, judicially notice orders entered in prior state court proceedings involving the same parties); Locicero v. Leslie, 948 F. Supp. 10, 12 (D. Mass. 1996)(district court, in determining motion by conservators' former attorneys to dismiss complaint alleging malpractice and other claims based on attorneys' alleged failure to inform conservator of the need to file an accounting, could, without converting motion to motion for summary judgment, take judicial notice of transcript from settlement hearing, at which judge informed conservator of conservator's duty to file accounting of medical malpractice settlement

3

The primary documents from that record are: (1) the complaint filed by Nettles Hart in the state court; (2) the state court's <u>Order Granting Preliminary Injunction</u>; (3) the arbitrator's written decision issued on December 20, 2004, and entitled "Arbitration Award;" (4) the <u>Motion to Enforce Arbitration Award, for Sanctions, and for Injunctive Relief</u> filed by Nettles Hart on December 30, 2004; (5) the state court's order of January 3, 2005, in regard to Nettles Hart's motion to enforce the arbitration award; and, (5) the <u>Motion for Order to Show Cause</u> filed by Nettles Hart on January 4, 2005, the document complained of by the debtor in the pending adversary proceeding.

## B. The Parties and Their Relationships

The defendant Nettles Hart (the plaintiff in ParkNorth 2, the removed action), is a professional corporation whose members are attorneys who were once members of the debtor's predecessor London & Yancey, LLC. The debtor changed its name to "ParkNorth Group, LLC" on December 30, 2004.

---

with probate court); <u>Citizens for a Better Environment-California v. Union Oil Co. of California</u>, 861 F. Supp. 889, 897 (N.D. Cal. 1994)(district court may, when deciding motion to dismiss, take judicial notice of matters of public record, including court and agency orders and agency regulations), <u>aff'd</u>, 83 F.3d 1111 (9th Cir. 1996); <u>Briggs v. Newberry County School Dist.</u>, 838 F. Supp. 232, 234 (D.S.C. 1992)(when entertaining motion to dismiss, district court may, without converting motion to motion for summary judgment, judicially notice facts from prior administrative and state court proceedings involving the same parties), <u>aff'd</u>, 989 F.2d 491 (4th Cir. 1993); <u>Scarso v. Cuyahoga County Dept. of Human Services</u>, 747 F. Supp. 381, 382 (N.D. Ohio. 1989)(in action brought by father against state court judge and employees, state social services agency and its employees, mother of child and her attorney, alleging conspiracy to deprive him of physical possession of child, district court, in deciding motion to dismiss, could take judicial notice of events and facts which appeared of record in the state court custody proceedings), <u>aff'd in part and remanded</u>, 917 F.2d 1305 (6th Cir. 1990); <u>International Molders and Allied Workers, AFL-CIO v. Buchanan Lumber Birmingham</u>, 459 F. Supp. 950, 953 (N.D. Ala. 1978)(district court may, when deciding motion to dismiss, take judicial notice of relevant opinion of state supreme court on appeal of case involving plaintiff), <u>aff'd</u>, 618 F.2d 782 (5th Cir. 1980).

See also <u>Hoffman-Pugh v. Ramsey</u>, 312 F.3d 1222, 1224 (11th Cir. 2002)(district court, and court of appeals, on consideration of defendant's motion to dismiss libel complaint, appropriately considered entire book that plaintiff considered libelous, because she referred to it in her complaint and it was central to her claims); <u>Bryant v. Avado Brands, Inc.</u>, 187 F.3d 1271, 1276 (11th Cir. 1999)(district court, in ruling on defendant's motion to dismiss, appropriately took judicial notice of relevant documents legally required by and publicly filed with the Securities and Exchange Commission without converting motion to dismiss into motion for summary judgment); <u>ITT Rayonier, Inc. v. United States</u>, 651 F.2d 343, 345 n.2 (5th Cir. (Unit B) 1981)(in deciding whether to dismiss plaintiff's complaint, court may take judicial notice of its own records or of those of inferior courts).

ParkNorth Group, LLC., the debtor-plaintiff, (the defendant in ParkNorth 2), is a limited liability company. Mr. Thomas Elliott, one of the defendants in the state court action, is, according to the debtor's bankruptcy petition, the managing member of the debtor.

The parties' relationship is unusual. According to the Nettles Hart state court complaint removed to this Court as ParkNorth 2, Nettles Hart's members worked at London & Yancey, but they operated almost autonomously from the other members of the firm. They were referred to as the "Nettles group." The remaining members of the firm worked under the designation "Elliot group."

With two exceptions, London & Yancey was two law firms in one. Each group had its own staff and associates. Each was entirely responsible for its own distinct expenses, salaries, benefits, and insurance plans. Each had its own distinct compensation plan. Each had its own clients for which it provided services and billed. And each operated independently of the another.

The two exceptions were that the groups shared common overhead expenses based on a proration of actual cash receipts, and the Nettles group paid five per cent of its actual cash receipts to an entity owned by London & Yancey's majority stockholder, which owned certain assets used by London & Yancey.

Nettles Hart's members were separated from London & Yancey on October 21, 2003.

### C. The State Court Litigation

#### 1. Preliminary Matters

On October 30, 2003, Nettles Hart sued London & Yancey, LLC, and Mr. Elliott in the Circuit Court of Jefferson County, Alabama. The case was assigned Case No. CV 2003-006897. The purpose of the lawsuit was to force London & Yancey to turn over to Nettles Hart any fees it had collected, or might collect, from the Nettles group's clients.

On London & Yancey's motion, and with the consent of Nettles Hart, the issues regarding the fees collected by London & Yancey from Nettles Hart's clients were ultimately submitted to arbitration.

The arbitrator issued his decision on December 20, 2004. He concluded that London & Yancey had collected $601,929.50 in fees from Nettles Hart's clients for work done by the former Nettles group members. But he determined that the former Nettles Group members owed substantial expenses to London & Yancey, which would be offset against the fees collected from the Nettles group's clients. The balance was $148,151.63.

5

In his order, the arbitrator directed London & Yancey to turn over the remaining $148,151.63 in collected fees, "from that London and Yancey Special Account held in the nature of escrow to the individual plaintiffs as their interest may appear in The Nettles Group Agreement or as otherwise directed by the plaintiffs individually." Arbitration Award entered December 20, 2004, at 6.

The arbitrator then dismissed all other claims of any sort by either party against the other, other than those specifically described and disposed of in the arbitration award.

On December 30, 2004, Nettles Hart filed a motion in the state court litigation styled Motion to Enforce Arbitration Award, for Sanctions, and for Injunctive Relief. That motion alleged that London & Yancey and Mr. Elliott had failed to, or refused to, turn over the fees which, according to the arbitrator, belonged to Nettles Hart. The motion sought injunctive relief directing London & Yancey and Mr. Elliott to turn over the fees. It also asked for attorneys fees and costs involved in obtaining enforcement of the arbitration award. Id. filed December 30, 2004.

On January 3, 2005, the state court entered an order on Nettles Hart's motion to enforce the arbitration award. In that order, the court found that there existed "a serious concern," and "real and present danger," that London & Yancey and Mr. Elliott were, in essence, not inclined to turn over the fees belonging to the defendant, as ordered by the arbitrator, and were inclined to "divert" those fees. Order entered January 3, 2005. Based on that conclusion, the court directed London & Yancey and Mr. Elliott to turn over the fees to the state circuit court clerk and to desist from diverting or paying those funds to anyone other than the state circuit court clerk. The court required the turnover by 5:00 p.m. on the date the order was issued.

## 2. The Alleged Stay Violation

ParkNorth Group, LLC., filed the present Chapter 7 case on January 3, 2005, the same day the state court entered its order directing London & Yancey and Mr. Elliott to turn over the fees to the state circuit court clerk. The petition was filed at 3:51 p.m.[2]

On January 4, 2005, Nettles Hart filed a pleading styled Motion for Order to Show Cause in the state court case. In that pleading, which is the focus of the debtor's complaint in the instant adversary proceeding, Nettles Hart alleged that during the course of the state court litigation, Mr. Elliott represented to the state court and the

---

[2] The debtor's complaint in this Court does not state what time the state court order was entered. The debtor merely contends that the state court judge was provided notice of the bankruptcy filing at 3:55 p.m., that the judge entered his order prior to receiving notice of the bankruptcy filing, and that the judge's order may "possibly" have been executed subsequent to the moment the bankruptcy petition was filed.

6

arbitrator that a special bank account had been established to preserve the fees belonging to the defendants. Nettles Hart provided documents to the state court and the arbitrator that reflected that such an account did exist.

Based on that information, Nettles Hart requested the state court to hold an evidentiary hearing to determine whether the special bank account existed. It also requested the state court to order Mr. Elliott, "to refrain from either destroying or modifying any documents, records, e-mails, recordings or information of any type relating to the finances of London & Yancey, L.L.C.; ParkNorth Group, L.L.C.; Thomas R. Elliott, individually; TRE, L.L.C.; or any other entity or individual with information related to London & Yancey, L.L.C.." Motion for Order to Show Cause filed January 4, 2005, at 5. And finally, Nettles Hart requested the state court to order:

> Thomas R. Elliott, his agents, representatives and counsel, to show cause ... why Thomas R. Elliott or others acting on his behalf, are not in contempt of this Court's previous orders concerning keeping and safeguarding property that has been determined to be property of the Plaintiffs and whether, as officers of the Court, Thomas R. Elliott, or others acting in his direction and behalf have made misrepresentations to this Court or failed to exhibit candor to this Court in breach of legal and/or ethical duties.

Id.

On January 6, 2005, the debtor removed the state court action (ParkNorth 2) to this Court and filed the present adversary proceeding (ParkNorth 1) in this Court. In its complaint in ParkNorth 1 the debtor contended that Nettles Hart's Motion for Order to Show Cause filed on January 4, 2005, in the state court case, (a copy of which is attached to the debtor's complaint), constituted a veiled attempt to reach property of its bankruptcy estate and as such was a violation of the automatic stay. Furthermore, the debtor asked, ostensibly pursuant to section 105 of the Bankruptcy Code, 11 U.S.C. § 105(a), that Nettles Hart be held in contempt for that stay violation and that appropriate sanctions be awarded, including attorneys fees.[3]

---

[3] A corporate debtor may not maintain a cause of action pursuant to section 362(h). Jove Eng'g v. IRS (In re Jove Eng'g), 92 F.3d 1539, 1546 (11th Cir.1996). But a corporate debtor may seek relief for stay violations pursuant to section 105(a). Id. at 1554. The pertinent part of section 105 reads:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

## III. Conclusions of Law

### A. The Standard for Granting a Motion to Dismiss

A complaint may be dismissed for failure to state a claim only if it is clear that no relief can be granted under any set of facts that could be proved consistent with the allegations contained therein. Blackston v. Alabama, 30 F.3d 117, 120 (11th Cir. 1994). The per curiam opinion of the Court of Appeals for the Eleventh Circuit in Kirby v. Siegelman, 195 F.3d 1285, 1289 (11th Cir. 1999), states, "When considering a Rule 12(b)(6) motion to dismiss, a court must accept the allegations in the complaint as true, construing them in the light most favorable to the plaintiffs." Id. at 1289. And writing for the Supreme Court of the United States in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), Justice Hugo Black explained that such motions should be granted only if the defendants demonstrate, "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). As this opinion explains, the Court finds that Nettles Hart has met these burdens and that the complaint is due to be dismissed.

### B. Res Judicata, Collateral Estoppel, and the Arbitration Award

The arbitration award entered in the state court action is conclusive between these parties. Code of Ala., 1975, § 6-6-14. It is in the nature of a judgment, which, by application of the principles of res judicata, bars relitigation of the claims submitted to arbitration in this or any other proceeding. Old Republic Ins. Co. v. Lanier, 790 So.2d 922, 928 (Ala. 2001), cert. denied, 534 U.S. 893 (2001). See Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373 (1985)(federal courts must give preclusive effect to judgments rendered by state courts and utilize state law to determine the preclusive effect of said judgments); Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984)("[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.").

In addition, collateral estoppel precludes the parties to the state court proceeding from relitigating, in this or any other proceeding, the issues embraced in and concluded by the arbitration award. Old Republic Ins. Co. v. Lanier, 790 So.2d at 928; Rhodes v. Folmar, 208 Ala. 595, 94 So. 745, 748 (1922).

### C. The Automatic Stay

The debtor contends that Nettles Hart's Motion for Order to Show Cause, filed on January 4, 2005, in the state court case, violated the stay because it constituted an

---

11 U.S.C. § 105(a)

8

"end run" to obtain possession of assets which are property of the debtor's bankruptcy estate.  However, the only assets involved in the state court case are the fees being held by the debtor, or more appropriately identified, the fund of money holding those fees.  And because the state court arbitrator specifically ruled that those fees, and that fund, belong to Nettles Hart, those fees, and that fund, consequently, could not have been part of the bankruptcy estate that was created when the debtor filed its bankruptcy petition.  Therefore, Nettles Hart's effort to obtain possession of those fees and that fund could not have violated the automatic stay.  For that sole reason, the debtor's complaint must be dismissed.  But there are additional reasons which require dismissal of the debtor's complaint.

### D.  Standing

The complaint must be dismissed because the debtor lacks standing to prosecute a contempt action against Nettles Hart for the alleged violation of the stay.

The party invoking federal jurisdiction bears the burden of establishing standing. Writing for the Supreme Court of the United States in Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992), Justice Antonin Scalia explained, "the irreducible constitutional minimum of standing contains three elements." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). Justice Scalia added:

> First, the plaintiff must have suffered an "injury in fact"--an invasion of a legally protected interest which is (a) concrete and particularized, see id., at 756, 104 S.Ct., at 3327; Warth v. Seldin, 422 U.S. 490, 508, 95 S.Ct. 2197, 2210, 45 L.Ed.2d 343 (1975); Sierra Club v. Morton, 405 U.S. 727, 740-741, n. 16, 92 S.Ct. 1361, 1368-1369, n. 16, 31 L.Ed.2d 636 (1972); and (b) "actual or imminent, not 'conjectural' or 'hypothetical,' " Whitmore, supra, 495 U.S., at 155, 110 S.Ct., at 1723 (quoting Los Angeles v. Lyons, 461 U.S. 95, 102, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983)). Second, there must be a causal connection between the injury and the conduct complained of-- the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." Simon v. Eastern Ky. Welfare Rights Organization, 426 U.S. 26, 41-42, 96 S.Ct. 1917, 1926, 48 L.Ed.2d 450 (1976). Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." Id., at 38, 43, 96 S.Ct., at 1924, 1926.

Id. at 561 (footnote omitted).  The debtor has not met these elements, therefore, the complaint should be dismissed.

### E. Property of the Estate and the Chapter 7 Trustee

Even if the funds did not belong to Nettles Hart, they would have become part of the bankruptcy estate when the debtor filed its Chapter 7 petition. That property belongs to the Chapter 7 trustee, who has the exclusive right and power to possess, use, and dispose of that property as long as he does so according to the Bankruptcy Code. So even if the funds had become part of the bankruptcy estate, the debtor would not have had any right to possess them, or use or dispose of them, or have any say in how they were used or disposed of by the trustee. Consequently, Nettles Hart's act to obtain possession of those funds could not have injured the debtor. The debtor would have had no right to those funds even if they did not belong to Nettles Hart. For this additional reason, the complaint should be dismissed.

### F. No Action Against the Debtor

Nettles Hart's Motion for Order to Show Cause sought an evidentiary hearing to determine the existence of the special bank account which contained Nettles Hart's money. It sought to prevent Mr. Elliott from destroying financial information. And it sought to have Mr. Elliott provide the court with an explanation of his actions.

The motion did not, on its face, ask that the debtor be required to do anything. It did not ask that anything be taken from the debtor. It was strictly directed at Mr. Elliott and his conduct, both past and prospective. The filing and prosecution of the motion did not therefore, constitute the continuation of an action against the debtor, and did not, from that standpoint, violate the automatic stay. See United States v. Huckabee, 783 F.2d 1546 (11th Cir. 1986)(bankruptcy court lacked jurisdiction to enjoin IRS from imposing liability on debtor's officers).[4]

---

[4] As an agent, manager, or other associated individual, Mr. Elliott is not entitled to the protection that the stay affords the debtor. The court in Gray v. Hirsch, 230 B.R. 239 (S.D.N.Y.1999) explains the law in this area. The opinion there reads in part:

> It is well-established that stays pursuant to § 362(a) are limited to debtors and do not encompass non-bankrupt co-defendants." Teachers Ins. & Annuity Ass'n v. Butler, et al., 803 F.2d 61 (2d Cir.1986) (declining to extend stay of action against debtor partnership to its co-defendants, non-debtor individual partners). Applying Teachers Ins. & Annuity Ass'n, courts in this circuit regularly refuse to extend a debtor corporation's § 362 stay to its non-debtor officers and principals. See, e.g., Variable-Parameter Fixture Dev. Corp. v. Morpheus Lights, Inc., et al., 945 F.Supp. 603 (S.D.N.Y.1996) (non-debtor principal who, under state law, was debtor corporation's "alter ego"); E.I. Du Pont De Nemours & Co. v. Fine Arts Reprod. Co., et al., No. 93 Civ. 2462(KMW), 1995 WL 312505, *5 (S.D.N.Y. May 22, 1995) (non-debtor who was debtor corporation's president and guarantor); Levesque v. Kelly Communication, Inc., et al., 164 B.R. 29, 30 (S.D.N.Y.1994)

10

Furthermore, the relief the motion sought, even if granted, would not have required the debtor to do anything, and it would not have taken anything from the debtor. Similarly it would not have required Mr. Elliott to take anything of the debtor's and give it to Nettles Hart.

Therefore, the motion does not represent an attempt to acquire the debtor's assets, whatever those may be. Consequently, the filing and prosecution of the motion does not constitute an attempt to collect a debt either from assets of the estate or assets of the debtor, and did not, from that standpoint, violate the automatic stay. For this additional reason, the complaint should be dismissed.[5]

## IV. Conclusion

Based on the above, the Court concludes, even if the allegations in the debtor's complaint are accepted as true, and they are construed in the light most favorable to the debtor, Nettles Hart has demonstrated beyond doubt that the debtor can prove no set of facts in support of its claim which would entitle it to relief. Consequently, dismissal of the debtor's complaint is mandated.

## V. Order

It is therefore ORDERED, ADJUDGED and DECREED that:

1. The Motion to Dismiss Complaint for Sanctions is **GRANTED**;

2. The Motion to Dismiss is **GRANTED**;

---

(non-debtor whose two debtor corporations bore his name); CAE Indus. Ltd., et al. v. Aerospace Holdings Co., et al., 116 B.R. 31, 32 (S.D.N.Y.1990) (non-debtor former Chairman, CEO, and Director of debtor corporation); In re Crazy Eddie Sec. Litig., 104 B.R. 582, 584 (E.D.N.Y.1989) (all non-debtor co-defendants affiliated with debtor corporation); Ripley v. Mulroy, et al., 80 B.R. 17, 18 (E.D.N.Y.1987) (non-debtor "president, sole common-stock shareholder, and controlling person" of debtor corporation).

Id. at 242.

[5] Notwithstanding the above, to avoid any misunderstanding regarding this point, it is this Court's finding that – the property involved in the state court case does not belong to either the debtor or the bankruptcy estate. Therefore, even if the motion filed by the defendant in the state court case does, as alleged by the debtor, constitute an attempt to gain possession of that property, it did not violate the stay. And even assuming for argument that the filing of the motion constituted a violation of the stay, the debtor would not, under any circumstances, have the requisite standing to bring a contempt action based on that stay violation.

3. The defendant's Motion for Protective Order to Quash Subpoena of Mark White is **MOOT**; and

4. This order is a written opinion for purposes of the E-Government Act, Pub. L. No. 107-347.

DONE this the 29th day of September 2005.

/s/Benjamin Cohen
BENJAMIN COHEN
United States Bankruptcy Judge

BC:sm
Mr. Lee Benton, attorney
Mr. Scott Williams, attorney
Mr. Dennis Schilling, attorney
Mr. James Henderson, trustee
Bankruptcy Administrator
Mr. Robert Rubin, attorney
Mr. Derek Meek, attorney
State Court Clerk for Case No. CV 2003-006897